ILLINOIS CENTRAL RAILROAD COMPANY *v.* MAHON LIVE STOCK COMPANY.

[71 South. 802.]

1. CARRIERS. *Carriage of live stock. Presumption and burden of proof. Damages. Question for jury. Appeal and error. Review. Theory of case below. Injury. Right of action.*

In a suit for damages to a shipment of live stock, where the testimony showed that the stock were in good condition when delivered to the defendant railroad and that they were in a badly

damaged and bruised condition upon their arrival at their destination, it devolved upon the railroad company, in order to exonerate itself from liability in the case, to show by testimony that the stock were carefully handled by it between the point of shipment and the point of destination. In order to do this it must show not only how the car of stock was handled while actually in transit upon the road, but must also show in what manner they were handled in the yards of the company at the points of starting and destination, and intermediate points and also whether handled or not and if so in what manner, while remaining in its yards at any station, and failing to do this the presumption is not rebutted that the car of stock was negligently, and wrongfully handled in one of these yards, thereby causing the injuries for which suit was brought.

2. SAME.

In such case, defendant's motion at the conclusion of plaintiff's evidence, for a peremptory instruction, was properly overruled, since regardless of whether the testimony in the case had shown the correct measure of damages, the plaintiff, if any damages were shown, was entitled to recover at least nominal damages.

3. APPEAL AND ERROR. *Review. Theory of case below.*

Where all the instructions for both parties were drawn with reference to the measure of damages stated by the court, and all the instructions asked by the carrier were given, the question whether such measure of damages was correct, could not be raised by the carrier on appeal, as it was bound by the theory of the trial in the court below.

4. CARRIAGE OF LIVE STOCK. *Injury. Right of action.*

It was not the intention or purpose of the Carmack Amendment to the interstate commerce law, making the initial carrier liable for damages on lines of connecting carriers, to deprive the shipper of his common law action against such carriers.

APPEAL from the circuit court of Marshall county.
HON. J. C. TOTTEN, Special Judge.

Suit by the Mahon Live Stock Company against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*James Stone & Son* and *Mayes, Wells, May & Sanders,* for appellant.

*Lester G. Fant,* for appellee.

111 Miss.—32

SYKES, J., delivered the opinion of the court.

The appellee, plaintiff in the court below, sued the defendant railroad company in the circuit court of Marshall county for damages to a carload of thoroughbred horses which he had purchased and shipped from Lexington, Ky., to Holly Springs, Miss. The shipment first moved from Lexington over the Southern Railway Company, under a bill of lading of that railroad. The shipment consisted of thirty head of thoroughbred horses, which were loaded into one car by the appellee without any partitions being placed therein to separate young stallions, from one to two years old, from the mares. This shipment was accepted by the railroad company as loaded by the shipper. The car was turned over to and accepted by the appellant, the Illinois Central Railroad Company, at the city of Louisville, Ky., at four-fifteen p. m., on the 12th of October, 1912, and did not leave on a train from that place until seven-thirty p. m., a space of three hours and fifteen minutes, during which time it remained in the railroad yards of the defendant railroad company. Whether it was switched or not during this time, and the nature of the handling of the car in the yard, is not clear from the testimony. At the time the stock were delivered to the Illinois Central Railroad Company at the above point, the record shows they were in good condition. From this point, they were transported to Central City, Ky., arriving there at two-thirty a. m., and remaining there until seven a. m. The record shows they were switched somewhere, but the nature and extent of it is not shown. From Central City they were transported to Paducah, arriving there at one p. m., where they were delivered to the feeding pens, unloaded, fed and watered, and reloaded at eight p. m., and then remained in the car until three-fifteen a. m., next morning. That the car was handled by a switch engine to and from the feeding pen is shown, yet the appellant fails to show the nature of this

switching.   They were next transported to Frogmore
Yards, Tenn., arriving there at one p. m. of the 14th.
They remained in these yards until three-forty-five p. m.
The record is here silent as to whether or not they were
handled, and, if so, how, in this switchyard.   The stock
reached Holly Springs at eight-forty p. m. in a badly
damaged condition.   The consignee first declined to ac-
cept the stock, but upon an agreement with the agent
of the defendant railroad company he accepted them
and placed them in a separate stable until after exam-
ination was made of them by the veterinary of the de-
fendant railroad company.   The testimony shows that
the plaintiff complied with the requirements of the bill
of lading as to the making of his claim for damages
within the proper way and within the proper time.   An
assignment of error is predicated on a failure to com-
ply with this stipulation of the bill of lading, but the
record shows that it was complied with.             ·         .

The testimony in the case shows that the stock were
in good condition when delivered to the Illinois Central
Railroad Company at Louisville, Ky., and that they were
in a badly damaged and bruised condition upon their
arrival at Holly Springs.   It therefore devolved upon
the railroad company, in order to exonerate itself from
liability in the case, to show by testimony that the stock
were carefully handled by them between Louisville and
Holly Springs.   This they attempted to do by showing
only how the car of stock was handled while actually
in transit upon the road, but utterly failed to show in
what manner they were handled in the yards of the
defendant company at Louisville, Central City, Paducah,
and Frogmore Yards, where they remained for a num-
ber of hours in each yard.   This court, as a matter of
common knowledge, knows that they were switched or
that the car was moved in these yards.   On the arrival
at each of these places, the car had to be uncoupled and
disconnected from the train in which it moved to this
point, and moved off the main track out of the way of

passing trains, and it had to be coupled up to the train in which it moved out of this place. It was handled by an engine when transported to the stock pens at Central City and from thence back to the point where it was picked up by the train that transported it to Frogmore Yards.

In order to exonerate itself from liability in a case of this character, the railroad company must show, not only the way the car was handled while actually in transit, but also whether handled or not, and, if so, in what manner, while remaining in its yards at any stations. Failing to do so, the presumption is not rebutted that this car was negligently and roughly handled in one of these yards, thereby causing the injuries for which this suit is brought.

The bill of lading contained a stipulation to the effect that, in case of injury, the proper measure of damages was the difference in price at the point of shipment, viz., Lexington, Ky., of the stock on the date of the shipment, before they were injured, and after they were injured. The testimony of the appellee showed the injuries to these horses and also the market value at the point of shipment on the day of shipment, and the day of the injury. At the conclusion of the testimony of the appellee, a motion was made for a peremptory instruction by the appellant, which motion was overruled by the court. This motion was properly overruled because the appellee was entitled to recover damages. Whether or not the testimony in the case showed the correct measure of damages at this time was not an issue on the motion for a peremptory instruction, because, if any damages are shown to have been sustained, then, certainly, nominal damages were recoverable, even granting for the sake of the argument that the correct measure of damages had not been proven.

The court, in overruling the motion for a peremptory instruction at the conclusion of the appellee's testimony, announced that the measure of damages was the differ-

ence in the value of the stock at Lexington the day they were shipped, and their value at Lexington the day they reached Holly Springs, not to exceed the various amounts named in the bill of lading. To this ruling of the court, no exception appears in the record of counsel for appellant. The instructions, both for the appellant and the appellee, were drawn upon this theory. All the instructions asked by the appellant upon the measure of damages were given. Consequently, whether or not this was the correct measure of damages cannot be raised by the appellant in this court, because the appellant and appellee both without exception accepted and tried the case upon this theory. Complaint is also made by the appellant of the instructions granted appellee to the effect that in this case it was the duty of the railroad company to show to the satisfaction of the jury that the damaged condition of the stock was not caused by negligence in the handling of the car by the engines or trains of the defendant. These instructions, however, correctly announce the rule of law in cases where shipments of stock are delivered in good condition to a railroad company, and are bruised and injured when the railroad company offers them for delivery at the point of destination to the consignee. *Railroad Co.* v. *Bigger,* 66 Miss. 319, 6 So. 234. The rule announced in the above case is in line with that announced in other cases in this state.

It is also contended by the appellant that this suit is based upon the Carmack Amendment to the Interstate Commerce Law, and that, under this amendment, the initial carrier, and the initial carrier only, is liable for damages for injuries to shipments of stock. In this case, the testimony shows that the stock were delivered in good condition to the Illinois Central Railroad Company at Louisville; that they were delivered to the consignee at Holly Springs, their destination, by the Illinois Central Railroad Company, in a damaged condition; and that the damage to this shipment occurred

while they were in the hands of the defendant railroad company. This being true, we do not understand the cases cited by counsel as sustaining this proposition to be applicable. There was an injury, a tort committed by the appellant company to the appellee, for which a cause of action accrued to the appellee; and it was not the intention nor purpose of the Carmack Amendment to deprive the consignee of a cause of action which he had by common law against the railroad company in cases of this character. In fact, this act of Congress expressly negatives any such idea. The verdict of the jury was sustained by the testimony.

We find no errors in the other assignments of error not above especially discussed, and the case is therefore affirmed.

*Affirmed.*