# THE GREAT ATLANTIC & PACIFIC TEA COMPANY v. MULHOLLAND, et ux.

No. 39817 January 16, 1956 84 So. 2d 504

*Watkins & Eager,* Jackson; *Deavours & Hilbun,* Laurel, for appellants.

504

*Melvin, Melvin & Melvin,* Laurel, for appellees.

GILLESPIE, J.

Appellees sued appellant for damages grounded on an alleged nuisance in that appellant deposited in a concrete bin, which was located at the rear of appellant's grocery store and across the alley from appellees' rental property, large quantities of decaying vegetables, fish, meats, fruits and other debris; and that such garbage and debris was scattered by wind, dogs, and people, over appellees' property; that rats, bugs, roaches and other vermin bred in the garbage and invaded appellees' property; that noxious and offensive odors permeated the appellees' property; that the value of appellees' property was destroyed, and appellees were unable to rent their property because of conditions created by appellant. The suit was for damages for a six-year period ending in April, 1954. The jury returned a verdict for $10,000, and judgment was entered for that amount.

Appellees' property consisted of a lot and two dwelling houses thereon. The lot was 156 feet east and west by 50 feet north and south. The main building, containing three rental apartments, faced west on 7th Avenue. On the rear of the lot, facing an alley, was a small rental house, the front of which was 40.3 feet distant from the rear side of the appellant's store building and 20 feet from an alley running between the property of appellant and appellees. Appellees' property was bounded on the north by an alley 20 feet wide. Appellant's lot faced south and ran back to the alley that bounded the

north line of appellees' property. The rear of appellant's store did not extend to the alley, but to the rear was left a loading space of about 30 feet; and on the west side of this parking and loading space, there was located a concrete trash bin along side the alley and directly in front of the rear house of appellees. This bin was 3.3 feet east and west, 18 feet north and south, and 3.5 feet deep. The airconditioning exhaust from appellant's store was located in a window facing west near the rear of the store. The exhaust duct was curved so as to blow the air therefrom at an angle to the southwest.

The proof on appellees' part, made out largely on the testimony of Mrs. Mulholland, was that for the six years in question, the bin to the rear of appellant's store was full and overflowing with all kinds of garbage, including oranges, lemons, grapefruit, boxes, paper, dead ducks and chickens, crabs, and that this garbage was scattered all over her lot; that she had cleaned up tons of fruit and great amounts of trash and garbage from her yard; that it had to be pushed off her front yard, which was some 155 feet to the west of the trash bin with two buildings between; that vegetables, cartons, sacks of fruit and bones were all over the street and yard; that fish ice was thrown out behind the store; rotten meat and fish caused offensive odors; the exhaust fan from the airconditioning caused the odors to be blown all the way to the front house; rats, roaches and flies were all over the houses and they came from the appellant's bin; the garbage and trash was hauled off every morning except holidays; that she could not rent the apartments and had lost $7,275 in rent; that in order to clean up the garbage and trash from her yard, she had hired a boy every other day for six years and paid him $4.00 for each cleaning, or the total sum of $4,680.00.

The proof on behalf of appellant was that all meat and fish scraps were kept inside the store in cold stor-

age and sold each week for rendering purposes; that all fruits and vegetables that were unsalable were kept inside and loaded directly from the store to a farmer for hog feed; that all floor sweepings were kept in containers inside the store and loaded directly to the garbage collector; that the trash bin had a built-in drain, and nothing but paper and cardboard boxes and like trash was ever put in the bin; there were many dogs in the neighborhood, and garbage cans placed along the streets and alleys were turned over by dogs and people and the garbage scattered; that people pilfered and rummaged the trash bin from time to time; since the store was built, appellant had been under contract with an exterminating firm who regularly treated and inspected the premises, including the bin, and that rats, roaches, and other vermin had been kept under control at all times; that no noxious odors were present.

■■ ■ Taking the testimony as a whole, there is no proof that the great quantities of vegetables, fruits and dead fowls came from appellant's premises, nor by what agency they were placed in such quantities on appellees' property. We are of the opinion that there was no proof that the rats, roaches, and other vermin in appelles' houses were the result of any nuisance maintained by appellant.

The most that the jury could have found as to the maintenance of a nuisance by appellant was that (1) there was offensive odors from the airconditioning exhaust and from fish ice left in crates or boxes at the rear of the store or in the trash bin, and from such fruits and vegetables as from time to time were in boxes or crates stacked at the rear of the store or placed in the trash bin; and (2) the trash bin was too small to hold all papers and boxes and cartons placed therein and piled thereon, and some of this was blown or scattered on the appellees' yard adjacent to the alley separating the properties, and obstructed the alley.

From what has been said, it follows that appellant was not entitled to a directed verdict.

■■ Appellant complains of this instruction granted appellees: "If you find for the plaintiffs, you should award plaintiffs damages for the depreciation of the rental value of the property, if any is shown by the evidence, as these are proper elements of damages when shown by preponderance of the evidence." This instruction was error. It does not limit the depreciation of rental value to acts for which the proof showed appellant responsible. It denies the jury the right to find that other causes might have contributed to the depreciated rental value of the property. The greater part of the proof of tons of trash and garbage Mrs. Mulholland testified was on her property was not shown to have been there by or through any fault of the appellant.

■■ Appellant contends that under the proof as to damages the most that appellees could recover would be nominal damages. We decline to hold that on remand of this case the appellees will be limited to recovery of nominal damages; although we could not uphold a substantial verdict under the proof as shown by the present record. Damages were claimed for depreciation in rental value and for expense in cleaning up the yard. The claimed loss of $7,275 in rentals was based solely on Mrs. Mulholland's testimony that the year before appellant built its store, she collected $2580 in rents from the property; that each year thereafter she collected less rent than $2580; that she did not have a record of which of the apartments were rented or when they were vacant; that she summed up the difference of what she did get and what she should have gotten, and that was her loss; that people would smell the odors and see the garbage and would either move out or fail to rent the property.

■■ The measure of damages in this case was the depreciation in the rental value of the property, plus

any special damages proven. Southland Company v. Aaron, et ux, 72 So. 2d 161. The trouble here is the kind of proof offered in support of damages. It may not be shown by proving what rent was collected before the nuisance and what rent was thereafter collected.

The proper way to prove depreciation in rental value, and probably the only way, although we do not so decide, is by the testimony of a qualified person as to the reasonable market rental value without the nuisance, and the reasonable market rental value after the creation of the nuisance; and since this suit covers a six-year period, it should be likewise proven for each separate year, because rental values may vary with the years.

As to the item of damages of $4,680 alleged to have been spent for cleaning up the yard, the proof was insufficient for the jury to have determined whether the sum alleged to have been spent was reasonable. Neither the names of the persons employed, the rate of pay, nor the time spent in performing the work, was shown by the proof. The only proof offered as to this item was the total amount expended, arrived at by multiplying $4.00 by the number of times the yard was said to have been cleaned. If appellant is to be charged with this special item of damage, it should be shown that the expenditure was necessary as a result of appellant's wrong, which was not shown in this case, since it was not shown that appellant was responsible for a large part of the garbage allegedly on appellees' property, and the reasonable value of the services rendered. 25 C.J.S. 531.

Appellant complains of the following two instructions granted appellees:

"The court instructs the jury for the plaintiff that where the testimony of an intelligent witness is undisputed, is reasonable in itself and is in reasonable harmony with the physical facts and the facts of common

observation among experienced persons and the witness is unimpeached, then you must act on the testimony and cannot reject it.''

''The court instructs the jury for the plaintiffs that evidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible or unreasonable, cannot be arbitrarily disregarded or rejected by you even though the witness is a party or interested and unless shown to be untrustworthy, is to be taken as conclusive or binding on the triers of the facts.''

Both of these instructions were erroneously given. They invade the province of the jury as being comments on the weight of the evidence. These instructions could hardly have been directed to the testimony of anyone except Mrs. Mulholland, one of the appellees, and her testimony to some extent, at least, was inherently unbelievable, improbable, and unreasonable; moreover, she was contradicted as to some of her testimony. We doubt if such instructions should ever be given, for wherever such a situation as therein stated exists, the jury should be peremptorily instructed as to the factual situation involved. Cf. Allen v. Lyles, 35 Miss. 512. The instructions are also bad for the reason that they are mandatory in character and practically amount to a peremptory charge.

Appellees contend that these instructions were not error, and that this Court has held in a number of cases, including Tombigbee Electric Power Association v. Gandy, 216 Miss. 444, 62 So. 2d 567, that where the testimony of a witness is uncontradicted and he is not impeached in some manner known to the law, and is not contradicted by the physical facts and circumstances, it must be accepted as true. What was said in the Gandy case was a rule of law on the basis of which it was held that the appellant was entitled to a peremptory instruction; but it is equally clear that if the case had been

one where an issue of fact should have been submitted to the jury, the court could not properly have embodied the stated rule in an instruction. The rule stated in the Gandy case is one by which testimony is to be measured as to its ultimate legal effect in the given situation; but it has no place in an instruction to the jury whose sole province it is to resolve the facts on issues presented to it for determination. Moreover, the instructions are faulty because they are pure abstractions not related to the case.

█ █ Instruction No. 8 granted appellees was error in that it assumed as a fact that the appellant permitted offensive and noxious odors on and into the premises of appellees.

█ █ Appellant offered proof that a broken sewer on appellees' property produced offensive odors. The lower court excluded this testimony on the theory that since the appellant's answer denied the charges that odors came from its property and did not affirmatively give notice in writing that the odors came from the broken sewer. We think the lower court erred. This was not affirmative matter in avoidance that is required by the new pleading act to be set up in written notice. Proof that a wrong was done by someone other than the person charged is proof that the person charged was not guilty of the wrong; and such proof is admissible under a denial without affirmative notice.

█ █ Mr. Mulholland testified as to the value of appellees' property before and after the nuisance. Appellant requested and was refused an instruction to the effect that appellees were not entitled to recover anything for the alleged depreciation in the value of the property. This was error. There was no proof that the property of appellees' was permanently damaged. The measure of damages was the depreciation in the rental values, not the difference between the market value of the prop-

erty before and after the creation of the nuisance. South-land Company v. Aaron, supra.

■ ■ Appellees' instruction No. 5 was erroneously given because it assumes that plaintiff's property has been subjected to noxious and disagreeable odors.

■ ■ Appellees' instruction No. 1 was erroneously given. It is confusing, and the jury may have been warranted in believing that the mere existence of the appellant's store at the place in question was actionable.

■ ■ Appellant contends that certain pictures should not have been admitted in evidence. There is no evidence that the dead fowls and a beer can, shown in the photographs, were on appellees' property by any act of the appellant. These pictures should not have been admitted. Only those pictures depicting conditions for which appellant is shown to be responsible should be admitted.

Reversed and remanded.

*Hall, Lee, Kyle* and *Ethridge,* JJ.,concur.