UNION PRODUCING COMPANY, et al. *v.* PITTMAN

No. 42451 November 19, 1962 146 So. 2d 553

428

*O. W. Phillips,* Magnolia; *Brunini, Everett, Grantham & Quin, George P. Hewes, III,* Jackson, for appellants.

*Mounger & Mounger,* Tylertown, for appellee.

Rodgers, J.

This is an appeal from the Circuit Court of Walthall County, Mississippi, from a judgment in favor of appellee. The suit grew out of alleged damages to the land and timber of appellee, caused by drilling an oil well upon his lands by appellants.

The facts disclosed by the testimony in this case are as follows: The widow and children of F. M. Lee, deceased, deeded the land involved in this case to appellee, Joe N. Pittman. They reserved the oil and minerals in or under the land and the right of ingress and egress for the purpose of exploiting and removing them from the property. Later, the grantors and owners of the oil and minerals reserved in the deed to Joe N. Pittman sold their mineral rights to the Union Producing Company. In 1959, the Union Producing Company contracted with the Cook Drilling Company to drill an oil well on the lands owned by Joe N. Pittman. The Cook Drilling Company, in compliance with its contract, went upon appellee's land and commenced operation by grading the area and clearing it of timber. The well was found to be unproductive and was subsequently plugged and abandoned as a "dry hole."

In 1961, Mr. Pittman filed this suit, in which he charged that defendants wilfully, negligently and unnecessarily caused permanent and continuing damages to certain portions of the land owned by plaintiff because, it is alleged, defendants did not confine their operation to that portion of said land which was reasonably necessary to pursue their drilling operations and effectuate development for minerals. Plaintiff charged that by reason of the nature of the operation conducted by defendants on the premises, there was reasonably required an occupancy of approximately one and one-half acres, but, notwithstanding this, and in violation of the duty to plaintiff, defendants negligently and without necessity spread their operations to an area of approximately three acres. It is further charged that defendants unnecessarily destroyed 450 pine trees ranging in diameter from three to fifteen inches, having a value of $3,150, and they erected unnecessary dams and fills in connection with this operation, as a result of which plaintiff suffered permanent and continuing damages to his land in the amount of $1,000. The answer of defendants is to the effect that they used no more land than was reasonably necessary, and denied that plaintiff suffered damages other than necessarily caused by exercise of the rights granted under the aforementioned oil, gas and mineral lease.

■■ ■ The assignment of error filed by appellants alleges eight errors on which this case should be reversed, but in their brief they state that the basic question is whether or not they used only such land as was necessary and if its use of the land so utilized was reasonable and in accordance with standard oil field practices.

■■ ■ Appellants assert, and appellees admit, that a grant or reservation of minerals gives to the mineral owner the incidental rights of entering and occupying the lands involved, and making such use of the surface

thereof as is reasonably necessary to explore, mine, remove and market the minerals therein and thereunder. McNeese v. Renner, et al., 197 Miss. 203, 21 So. 2d 7. This Court has set out the rule clearly in the case of Gulf Refining Company v. Davis, 224 Miss. 464, 80 So. 2d 467, in which we said: ''Now, 'a grant or reservation of mines or minerals gives to the mineral owner the incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary in exploiting, mining, removing, and marketing the minerals.' 58 C. J. S., Mines and Minerals, Sec. 159b, p. 332. See also Sec. 159c, p. 334 thereof, as follows: 'A mineral owner, in the absence of additional rights expressly conveyed or reserved, is limited to as much of the surface and such uses thereof as are reasonably necessary properly to mine and carry away the minerals'.'' We therefore recognize that in the absence of further rights expressly conveyed or reserved, the rights of owners of minerals are limited to so much of the surface and such use thereof as is reasonably necessary to properly mine and carry away the minerals. These rights are also subject to the limitations that the mineral owner does not use the surface in such a way as unnecessarily to destroy or injure it. The right to remove minerals by the usual or customary method of mining exists, even though the surface of the ground may be wholly destroyed as a result thereof. The owner of the surface and the owner of the minerals should have due regard for each other and should exercise that degree of care and use which is a just consideration for rights of the other. The owner of the surface of the land has the right to enjoy the land free from annoyance, except such as reasonably arises from the opening, exploitation, mining, and marketing of the minerals. The mineral owner on the other hand is not limited by the fact that his acts may cause inconvenience to the surface owner.

Prof. J. W. Summers has pointed out in his treatise, Summers Oil and Gas, Sec. 652, p. 2, that an oil and gas lease carries with it the right to possession of the surface to the extent reasonably necessary to enable a lessee to perform the obligations imposed upon him by the lease. In short, the holder of a valid oil and gas lease has the right to go on the land and do all those things necessary and incidental to the drilling of a well, including the right to use the surface; nevertheless, the owner of the land may recover damages upon proof of wanton or negligent destruction, or where damages were done to portions of the land not reasonably necessary for oil and gas development under the lease. Plaintiff in the court below brought his suit based upon the proposition that the mineral owner and its agent, the driller of the well, committed unnecessary depredation upon his lands.

██ ██ Appellant in this case argues that the size of the location is a matter of which the lessee, and only the lessee, must necessarily be the judge. In some respects this statement is true. The selection of the place for drilling, as well as the time, is an absolute right of an operator and it cannot be questioned by the lessor. Nevertheless, the question of what is a reasonable use of the premises is a question of fact, and although the drilling operator may use as much of the surface as may be reasonably necessary, he cannot be unreasonable in the use of such land, nor oppressive or capricious in its use. The owner of the minerals may do what is reasonably necessary to recover minerals, but the mineral owner or agent is not the final judge as to what is reasonably necessary. This is a question of fact for the determination of the jury. The testimony for plaintiff showed that defendants used more than four acres of land to establish the well site, which was three acres more than was reasonably necessary to carry out its right of ingress and egress for the purpose of drilling

an oil well. Defendants, on the other hand, claimed that they used two and one-half acres, and that its use was reasonably necessary to accomplish their right to drill an oil well upon the lands. Plaintiff claimed that his cattle pond, which was outside the area used by defendants in drilling the well, was filled with trees, stumps, dirt and debris. It is said that the area of the pond was never used by defendants after it was filled with debris. Defendants, on the other hand, introduced testimony to show that the pond was small and that few trees were pushed into it, and that they could be removed with little trouble. Testimony for defendants is to the effect that no property was damaged outside of the the area necessarily used for the purpose of drilling the well.

The testimony is conflicting, and we are of the opinion that it was a question of fact as to whether or not defendants used more land surface than was reasonably necessary for its use in the drilling operation.

■■ ■ Appellants complain that plaintiff was permitted to testify that he wanted his land ''back'' like it was before the oil drilling operation, and they assert that they were not required under the law to put the land in the same condition it was in before the drilling operation. We do not believe that appellants can raise this objection on appeal because they went into this testimony thoroughly on cross-examination; and, moreover, they obtained an instruction that they were not required to restore the land to its former condition.

■■■ Appellants complain that the instructions granted appellee did not furnish an adequate guide for the correct measurement of damages alleged to have been sustained, and that they were confusing, misleading and susceptible of an interpretation that would result in pyramiding damages. The argument of appellants on this point is that an instruction granted appellee did not follow the rule laid down by this Court with reference to permanent damages to land. This rule is expressed

in 15 Am. Jur., Damages, Sec. 109, p. 517, in the following language: "In case of any injury of a permanent nature to real property the proper measure of damages is the diminution in the market value of the property by reason of that injury, or in other words, the difference between the value of the land before the injury and its value after the injury." This Court has repeatedly pointed out that the foregoing rule is the proper measurement of damages, when permanent injury is wrongfully done to real property, or property is taken by eminent domain proceedings. We will not undertake to cite or document the many cases on eminent domain proceedings where this rule has been pointed out, but some may be found in the opinion in the case of Miss. State Highway Commission v. Strong, 240 Miss. 756, 129 So. 2d 349. We feel that since this case may be tried again, the following authorities should be mentioned with reference to the foregoing rule: General Geophysical Company v. Brown, 205 Miss. 189, 38 So. 2d 703; Southland Company v. Aaron, et ux., 221 Miss. 59, 72 So. 2d 161; The Southland Company v. Aaron, 224 Miss. 780, 80 So. 2d 823; The Great Atlantic & Pacific Tea Company, et al. v. Mulholland, et ux., 226 Miss. 499, 84 So. 2d 504; Alabama Great Southern R. R. Co., 238 Miss. 618, 119 So. 2d 923. Cf. Atlantic Coast Line R. Co., et al. v. Saffold, 178 So. 288 (Ala. 1938); Miss. Law Journal, Proof of Damages to Property in Tort Actions, Vol. 33, No. 2, p. 151.

The testimony in this case is not clear that there were any permanent and lasting damages to appellee's land (as distinguished from temporary and special damages) outside of the perimeter of the oil well site.

We have pointed out the difference between the rule of damages for temporary and permanent injury to real estate, the rule with reference to special damages, and where damages are restricted to a part of the real estate, and we again call attention to the following au-

thorities: 15 Am. Jur., Damages, Sec. 110, p. 519; Ginther, et al. v. Long, 227 Miss. 885, 87 So. 2d 286; Mid-Continent Finance Corporation v. Massey, 58 So. 2d 5 (Miss.); Miss. Mills Company v. Smith, et al., 69 Miss. 299, 11 So. 26; Gulf Refining Company v. Davis, 224 Miss. 464, 80 So. 2d 467; Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So. 2d 645; City of Norwood v. Sheen, Exr., Etc., 126 Ohio St. 428, 186 N. E. 102, 87 A. L. R. 1375; Thornton Oil & Gas, Cum. Supp., 1960, Sec. 1159, Vol. 3, p. 68. Cf. Dickey v. Honeycutt, 106 So. 2d 665 (Ala. 1958); Reed v. Mercer County Fiscal Court, 295 S. W. 995, 54 A. L. R. 1275.

We are of the opinion, however, that appellant cannot complain on this appeal that the instruction granted appellee did not clearly inform the jury of the proper measure of damages because the record reveals that appellants obtained an instruction detailing the items of damages they claimed were allowable, and set out the method of determining the measurement of damages recoverable by plaintiff. It is not necessary to decide whether this instruction set out the proper method of determining the measurement of damages because the method submitted to the jury was requested by appellants, and they cannot now be heard to say that some other method should have been submitted. I. C. R. R. Company v. Mahon Livestock Co., 111 Miss. 496, 71 So. 802; Y. & M. V. R. R. Company v. Wade, 162 Miss. 699, 139 So. 403; Hitt v. Terry, 92 Miss. 671, 46 So. 829; Brush v. Laurendine, 168 Miss. 7, 150 So. 818.

Appellants next claim that the verdict of the jury is so grossly excessive as to evince bias, passion and prejudice, and that the verdict is not supported by substantial evidence. The testimony is conflicting on the amount of damages suffered by appellee. A map was introduced showing the boundaries of land claimed by defendants to have been used in drilling the well. Testimony of Mr. Hancock, the drilling contractor, was to

the effect that there was little timber in the area where they smoothed the ground to set up the well drilling operation. An expert forester examined the well location and the timbered land adjacent thereto and estimated the value of the timber to be $102.70 per acre. Other witnesses testified that the timber found around the well site was of like kind and grade as that destroyed by defendants. Pictures of the well site and adjacent timber were made exhibits in the record. Plaintiff put a much greater value on the timber and damages to the pond, but we have carefully examined the pictures and testimony in the record and have reached the conclusion that the verdict is so grossly excessive as to evince passion and prejudice on the part of the jury, and the case should be reversed because of the grossly excessive verdict. We are of the opinion, however, that under the testimony in this case a judgment not to exceed fifteen hundred dollars may be sustained by this Court as not being grossly excessive. We hold that the judgment of the trial court will be sustained as to liability and reversed for a new trial on the question of damages alone, unless within fifteen days from this date, appellee accepts a remittitur of two thousand dollars, in which event judgment will be entered here for fifteen hundred dollars; otherwise, the case will be reversed for a trial on the question of damages only.

Affirmed as to liability, and reversed as to damages unless a remittitur is entered in the sum of two thousand dollars.

Affirmed with remittitur; otherwise reversed and remanded for a new trial.

*McGehee, C. J., Lee, P. J., and Gillespie and Jones, JJ.,* concur.