**Larry Joe OLIVER and Lois Ann Oliver, Plaintiffs–Appellees,**

v.

**The AMITY MUTUAL IRRIGATION COMPANY, Defendant– Appellant.**

**No. 98CA1898.**

Colorado Court of Appeals, Div. I.

Dec. 23, 1999.

George McLachlan, Lamar, Colorado, for Plaintiffs–Appellees.

Shinn, Steerman & Shinn, Donald L. Steerman, Carl M. Shinn, Wendy S. Shinn, Lamar, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

In this negligence action, defendant, Amity Mutual Irrigation Co., appeals the trial court judgment awarding damages to plaintiffs, Larry Joe Oliver and Lois Ann Oliver, for injury to their property resulting from a break in the bank of defendant's irrigation ditch. We affirm.

Defendant's main irrigation canal lies immediately north of plaintiffs' farm. Following a week of heavy rain in 1995, a break in the south bank of the canal permitted silt and debris to wash across plaintiffs' alfalfa field.

Plaintiffs sued, alleging that the damage to their property was caused by defendant's negligent failure to maintain and repair its ditch. Following a three-day bench trial the court entered judgment for plaintiffs, award-

ing them $18,795 for losses resulting from the flooding of their property.

## I.

Defendant first contends that, because plaintiffs did not establish either the requisite standard of care or that defendant failed to conform to that standard, the trial court's finding of negligence was error. We disagree.

■ To establish a prima facie case of negligence, a plaintiff must prove: (1) the existence of a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) injury to the plaintiff; and (4) a causal relationship between the breach and the injury. Because negligence requires proof of the existence and breach of a legal duty, a negligence claim cannot be sustained without evidence of an applicable standard of care and evidence that the defendant's conduct did not conform to that standard. *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913 (Colo.1997).

Section 7–42–108, C.R.S.1999, provides in relevant part:

> Every ditch corporation organized under the provisions of law shall be required to keep its ditch in good condition so that the water shall not be allowed to escape from the same to the injury of any mining claim, road, ditch, or other property.

■ The duty of care imposed on ditch companies under this statute has been characterized as "ordinary care, such as a man of average prudence and intelligence would use, under like circumstances, to protect his own property." *City of Boulder v. Fowler*, 11 Colo. 396, 398, 18 P. 337, 337 (1888).

## A.

As an initial matter, we do not agree with defendant that expert testimony was required to establish the standard of care.

■ Expert testimony is required in negligence cases to establish the standard of care when the standard is outside the common knowledge and experience of ordinary persons. Whether the standard is a matter of common knowledge is a determination

committed to the sound discretion of the trial court. *Gerrity Oil & Gas Corp. v. Magness, supra.*

■ At the close of plaintiffs' case, defendant moved for dismissal, based in part on plaintiffs' failure to establish by expert testimony the standard of care that a ditch company would owe to an adjacent landowner under § 7–42–108. The trial court denied the motion, finding that defendant owed plaintiffs a duty of ordinary care and that "an ordinary person could conclude based on the evidence that [defendant] was negligent in the maintenance of the canal at the particular location involved in this case."

Defendant cites no authority, and our research has located none, requiring expert testimony to establish the standard of care for the design, construction, and maintenance of an irrigation ditch. At least one court has specifically declined to hold that expert testimony is required in such cases. *See Pine Creek Canal No. 1 v. Stadler*, 685 P.2d 13 (Wyo.1984) (standard of care was that of a reasonable, prudent ditch owner, and court did not need expert testimony to determine whether that standard had been breached).

Further, Colorado courts have declined to require expert testimony in similar circumstances involving allegations of noncompliance with industry standards. *See Gerrity Oil & Gas Corp. v. Magness, supra* (expert testimony not required to sustain negligence claim alleging that oil and gas operator violated regulations concerning oil well site reclamation operations); *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984)(whether defendant breached standard of care applicable to a reasonable pharmaceutical company did not entail specialized knowledge beyond the ken of persons of ordinary intelligence and, thus, did not require expert testimony); *Calvaresi v. National Development Co.*, 772 P.2d 640 (Colo.App.1988)(expert testimony not required where standard of care applicable to developers who marketed unsuitable property as a residential subdivision was not beyond knowledge and experience of average juror).

Finally, as discussed below, plaintiffs put on lay testimony by employees of defendant

with experience in ditch maintenance regarding what needed to be done to keep irrigation ditches in good repair and free of debris. Thus, the fact that plaintiffs offered no expert testimony did not mean that there was no evidence of the standard of care.

We conclude that it was within the trial court's discretion to rule that expert testimony was not required to establish the standard of care applicable to defendant.

### B.

Nor do we agree with defendant's related contention that plaintiffs' evidence was insufficient to establish the standard of care or the breach thereof.

█ It is for the trial court, as trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess the credibility of witnesses. Its findings will not be overturned on appeal unless the findings are so clearly erroneous as not to find support in the record. When the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result. *Flagstaff Enterprises Construction, Inc. v. Snow,* 908 P.2d 1183 (Colo.App.1995).

█ Section 7–42–108 required defendant to keep its ditch in good condition so that water could not escape and injure plaintiffs' property. Testimony from defendant's employees at trial established that, to fulfill its statutory duty, defendant had to prevent erosion of the ditch bank, keep the ditch free of sediment and debris, and control the amount of water flowing through its ditch by, among other things, keeping the spillway at the intersection of its ditch and another drainage ditch free of obstructions.

There was evidence that defendant failed to perform these duties. An employee of defendant testified that plaintiff Larry Oliver had complained to him regarding erosion of the south bank of the ditch and the need for riprap (a foundation or sustaining wall of stones) to halt the erosion. The employee testified, without objection, that portions of the south bank about which plaintiff complained were not riprapped until after the

break. Additionally, the employee testified that, only a few days before the break, there was a significant amount of debris in the ditch. The debris was removed and put on the south bank, obstructing the channel through which water from the intersecting drainage ditch was to run.

A former employee of defendant testified that, on the night of the break, he had observed defendant's ineffective efforts to patch a rat hole in the ditch. Both this witness and Larry Oliver testified to the relationship between the location of a cement core in the ditch bank and the erosion of the bank. In addition, Mr. Oliver related his own observations of the poor condition of the ditch bank just before the break.

█ Thus, there was evidence to support the trial court's finding that defendant's failure properly to maintain its ditch was a contributing factor in the collapse of the bank and the subsequent flooding of plaintiffs' property. Although there was also evidence to the contrary, such evidence does not afford a basis for overturning the trial court's ruling on appeal. *See Flagstaff Enterprises Construction, Inc. v. Snow, supra.*

### II.

Defendant also contends that the trial court's finding on causation was improperly based on speculation. Again, we do not agree.

█ Although a ditch company is not liable for damages caused solely by an "act of God," the company may not escape liability if its negligence contributed to or cooperated with an act of God to cause the damage. *Barlow v. North Sterling Irrigation District,* 85 Colo. 488, 489, 277 P. 469, 470 (1929).

### A.

█ Defendant's expert testified that it was not possible to state "to a reasonable degree of engineering probability" what caused the break in the ditch bank. Defendant argues that if the cause of the break cannot be determined from an engineer's viewpoint, the court's finding on causation is

necessarily a product of speculation or conjecture and is not supported by competent evidence. We are unpersuaded.

Although plaintiffs did not offer expert testimony on causation, they presented the testimony of witnesses who were acquainted with conditions of the ditch and of the south bank, as well as with the circumstances leading up to the break. Because these witnesses could properly express an opinion on causation, plaintiffs were not required to present expert testimony on the subject. *See Moore v. Associated Material & Supply Co.*, 263 Kan. 226, 948 P.2d 652 (1997)(nonexpert witnesses acquainted with conditions in the area could express opinion as to cause of flooding; therefore, summary judgment should not have entered for defendant based on plaintiffs' failure to present expert witness to establish causation); *City of Austin v. Howard*, 158 S.W.2d 556 (Tex.Civ.App. 1941)(in action for damages to land caused by overflow of river, nonexpert who had observed previous floods in the area could testify to cause of flood).

As noted above, defendant's employees offered testimony supporting the trial court's conclusion that defendant's failure properly to maintain the south bank of the ditch was a contributing cause of the collapse of the bank. The court was not required to accept the contrary opinion of defendant's expert. *See Corcoran v. Sanner*, 854 P.2d 1376 (Colo. App.1993).

Because the evidence was sufficient to establish that defendant's negligence contributed to or cooperated with the heavy rains in causing the damage to plaintiffs' property, the court did not err in concluding that defendant was liable for that damage. *See Barlow v. North Sterling Irrigation District, supra.*

B.

In its findings and conclusions regarding causation, the trial court noted that if the volume of water in the ditch on the relevant date had been sufficient to cause the ditch to overflow, the proximate cause of the injury would have been an act of God. It continued:

> However, the flow of water through the Amity Canal at all times relevant to this action [was] well within the amount of water the Canal was designed to carry and on June 3 and 4, 1995, the volume of water was less than it had been on the previous week. Therefore, the proximate cause of injury to the plaintiffs was the failure to maintain and construct an adequate south bank of the Amity Canal adjacent to the plaintiffs' field.

Defendant argues that this comment demonstrates that the court wrongfully assumed it was necessary for the ditch to overflow its banks in order for flooding to constitute an act of God. However, we decline to read this statement in isolation to reach the conclusion defendant urges. When the statement is read in the context of the entire ruling, it is clear that the court did not assume it was necessary for the canal to overflow its banks in order for the damage to constitute an act of God. Rather, the court based its finding of causation on evidence that defendant's negligence was a concurrent cause of the injury to plaintiffs.

The judgment is affirmed.

Judge METZGER and Judge NEY concur.