George E. ABRAHAM, II, and Virginia Abraham Plaintiffs

v.

SKLAR EXPLORATION COMPANY, L.L.C. Defendant

No. 5:04 CV 113 DCB JCS.

United States District Court, S.D. Mississippi, Western Division.

Oct. 19, 2005.

R. David Ringer, Ringer & Broome, P.L.L.C., Annette Elaine Triplett–Beasley, Ringer & Broome, P.L.L.C., Florence, MS, for Plaintiffs.

Michael B. Donald, Lemle & Kelleher, LLP, Shreveport, LA, William E. West, McDavid, Noblin & West, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This cause is before the Court on the defendant, Sklar Exploration Company, L.L.C. ("Sklar")'s motion for summary judgment (**docket entry 23**). Having carefully considered the motion and response, the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

This action was originally filed in the Chancery Court of Warren County, Mississippi, by George E. Abraham, II, and Virginia Abraham ("the Abrahams") against Sklar. Sklar is the lessee and operator of a certain Oil, Gas and Mineral Lease ("the lease") from Feld Heirs Limited Partnership, lessor, dated May 10, 2001. The Abrahams are surface owners of certain property subject to the lease. The Abrahams do not own any of the oil, gas or other minerals. The Abrahams' suit alleges that Sklar, in conducting drilling operations on the property, breached its duty to reasonably accommodate the interests of the surface estate, failed to pay surface damages for placement of a well, and failed to pay surface damages for a proposed pipeline. (Complaint, ¶¶ VIII, IX, XV, XVIII, XXIII, XXIV). As damages, the plaintiffs claim loss of use and diminution of value of their property. (Complaint, ¶¶ XXVI, XXIX). The state court action was removed to this Court, and the plaintiffs filed a motion to remand, alleging that Sklar had failed to allege the citizenship of

each of the members of its limited liability company. The Court denied the motion to remand, finding that the Notice of Removal alleges that none of the members of the limited liability company are citizens of the State of Mississippi, and that an affidavit submitted by Sklar specifies the citizenship of each of the members, none of whom are residents of Mississippi.

Sklar asserts that, as the operator and the sole entity authorized to conduct mineral exploration and production activities on the property, it has the right to conduct any and all operations necessary to develop, produce and transport oil, gas and other minerals on the affected property. The lease grants to Sklar, *inter alia,*

> the exclusive right of exploring, drilling, mining, and operating for, producing and owning oil, gas, sulphur and other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, power lines, telephone lines, employee houses and other structures on said land.

(Oil, Gas and Mineral Lease, ¶ 1). Sklar argues that it is entitled to summary judgment because it has breached no duty owed to the surface owner.

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Under Mississippi law, when the mineral estate is severed from the surface estate, by lease or by sale, the mineral estate becomes the dominant estate, because of the nature of the rights conveyed. *Union Producing Company v. Pittman,* 245 Miss. 427, 146 So.2d 553 (1962). "[A] grant or reservation of minerals gives to the mineral owner the incidental rights of entering and occupying the lands involved, and making such use of the surface thereof as is reasonably necessary to explore, mine, remove and market the minerals therein and thereunder." *Id.* at 555 (citing

*McNeese v. Renner*, 197 Miss. 203, 21 So.2d 7 (1945)). In *Gulf Refining Company v. Davis*, 224 Miss. 464, 80 So.2d 467 (1955), the Mississippi Supreme Court held:

> "[A] grant or reservation of mines or minerals gives to the mineral owner the incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary in exploring, mining, removing, and marketing the minerals." 58 C.J.S. Mines and Minerals, § 159b, p. 332. See also § 159c, p. 334 thereof, as follows: "A mineral owner, in the absence of additional rights expressly conveyed or reserved, is limited to as much of the surface and such uses thereof as are reasonably necessary properly to mine and carry away the minerals." [further citations omitted].

*Id.* at 470. The court further held:

> But "if the lessee, under the gas and oil lease, wrongfully injures the crops, he may be liable for the damages." 24 Am.Jur., Gas and Oil, Section 41, page 548. And if he negligently occasions injury to the lessor, he may be held liable for any resultant damages. See 24 Am.Jur., Gas and Oil, Section 103, page 602. [further citations omitted].

*Id.* As to the specific injuries alleged in *Davis*, the court found:

> Thus under the law and under this particular oil and gas lease, the defendant had the right to dig the original pit and to use it for the storage of salt water. When it became insufficient, as the proof here disclosed, the defendant had the right to construct another; and it was the judge as to the kind of pit it should construct. Its act in so doing was not unreasonable, oppressive, or capricious. The plaintiff had complained that salt water from the small pit was overflowing onto his land. Besides the field was making more salt water, and it was necessary to increase the capacity of the then existing pit, or to dig a larger one.
>
> However, it was not shown to be reasonably necessary for salt water to escape from the pit. Salt water was shown to be a menace to vegetation, trees and land; and if the defendant negligently permitted it to overflow or escape from the pit, it is liable for the resultant damage.
>
> Under the evidence in this case, there was an issue for the jury as to whether or not the defendant negligently permitted the salt water to seep or overflow onto the plaintiff's land . . . .

*Id.* at 470–71.

In *Pittman*, the Mississippi Supreme Court recognized that

> in the absence of further rights expressly conveyed or reserved, the rights of owners of minerals are limited to so much of the surface and use thereof as is reasonably necessary to properly mine and carry away the minerals. These rights are also subject to the limitations that the mineral owner does not use the surface in such a way as unnecessarily to destroy or injure it. The right to remove minerals by the usual or customary method of mining exists, even though the surface of the ground may be wholly destroyed as a result thereof. The owner of the surface and the owner of the minerals should have due regard for each other and should exercise that degree of care and use which is a just consideration for rights of the other. The owner of the surface of the land has the right to enjoy the land free from annoyance, except such as reasonably arises from the opening, exploitation, mining, and marketing of the minerals. The mineral owner on the other hand is not limited by the fact that his acts may

cause inconvenience to the surface owner.

Prof. J.W. Summers has pointed out in his treatise, Summers Oil and Gas, Sec. 652, p. 2, that an oil and gas lease carries with it the right to possession of the surface to the extent reasonably necessary to enable a lessee to perform the obligations imposed upon him by the lease. In short, the holder of a valid oil and gas lease has the right to go on the land and do all those things necessary and incidental, to the drilling of a well, including the right to use the surface; nevertheless, the owner of the land may recover damages upon proof of wanton or negligent destruction, or where damages were done to portions of the land not reasonably necessary for oil and gas development under the lease.

*Pittman*, 146 So.2d at 555.

In *Pittman*, the landowner alleged that the oil and gas operators had wilfully, negligently and unnecessarily caused damages to his land because they did not confine their operations to that portion of his land which was reasonably necessary. *Id.* at 554. The plaintiff alleged the drilling operations required only approximately one and one-half acres, but that the defendants "negligently and without necessity" used approximately three acres. *Id.* Further, the plaintiff alleged that the defendants had unnecessarily destroyed 450 of his pine trees. *Id.* The defendants answered that "they used no more land than was reasonably necessary, and denied that plaintiff suffered damages other than necessarily caused by exercise of the rights granted under [their] oil, gas and mineral lease." *Id.*

The case was tried before a jury, and the plaintiff received a verdict in his favor. On appeal, the defendant operating companies argued that "the size of the location is a matter or which the lessee, and only the lessee, must necessarily be the judge." *Id.* at 555. The Mississippi Supreme Court commented:

In some respects this statement is true. The selection of the place for drilling, as well as the time, is an absolute right of an operator and it cannot be questioned by the lessor. Nevertheless, the question of what is a reasonable use of the premises is a question of fact, and although the drilling operator may use as much of the surface as may be reasonably necessary, he cannot be unreasonable in the use of such land, nor oppressive or capricious in its use. The owner of the minerals may do what is reasonably necessary to recover minerals, but the mineral owner or agent is not the final judge as to what is reasonably necessary. This is a question of fact for the determination of the jury.

*Id.* at 555–56.

At the trial of the *Pittman* case, the evidence was conflicting. The plaintiff offered testimony that the defendants had used more than four acres of land to establish the well site, and that this was three acres more than was reasonably necessary to carry out the defendants' right of ingress and egress for the purpose of drilling an oil well. *Id.* at 556. The defendants, on the other hand, offered testimony that they had used only two and one-half acres, and that this was reasonably necessary to accomplish their right to drill an oil well on the plaintiff's land. *Id.* The plaintiff also claimed that his cattle pond, which was outside the area used by the defendants in drilling the well, had been filled with trees, stumps, dirt and debris by the defendants. *Id.* The defendants offered testimony that the pond was small, and that a few trees had been pushed into it but these could be removed with little trouble. *Id.* These were questions of fact which the Mississippi Supreme Court

found were properly submitted to the jury. *Id.*

The Mississippi Supreme Court also noted that the jury was properly instructed that the defendants were not required to restore the plaintiff's land to its former condition. *Id.* The remainder of the opinion deals with the proper measure of damages for injury to land. The court distinguishes "permanent and lasting" damages from "temporary and special" damages. *Id.* The proper measure of damages for the former "is the diminution in the market value of the property by reason of that injury, or in other words, the difference between the value of the land before the injury and its value after the injury." *Id.* (quoting 15 Am.Jur., Damages, Sec. 109, p. 517). The Court further mentioned, without elaboration, "the difference between the rule of damages for temporary and permanent injury to real estate, the rule with reference to special damages, and where damages are restricted to a part of the real estate." *Id.* at 557 (citations omitted).

Applying Mississippi law to the facts of this case, the Court finds that the threshold issue is the determination of who has superior rights to use the surface of the land. In this case, the mineral estate is the dominant estate, and Sklar has the "right to remove minerals by the usual or customary method of mining," which includes "the incidental rights of entering and occupying the land involved," "even though the surface of the ground may be wholly destroyed as a result thereof." *Pittman,* 146 So.2d at 555. Sklar is "not limited by the fact that its acts may cause inconvenience" to the Abrahams. *Id.*

■ However, Sklar "is limited to as much of the surface and such uses thereof as are *reasonably necessary* properly to mine and carry away the minerals," *Davis,* 80 So.2d at 470 (emphasis added), and may

not "use the surface in such a way as unnecessarily to destroy or injure it." *Pittman,* 146 So.2d at 555. Therefore, the law requires the Abrahams and Sklar to "have due regard for each other" and to "exercise that degree of care and use which is a just consideration for rights of the other." *Id.* The Abrahams have "the right to enjoy the land free from annoyance, except such as reasonably arises from the opening, exploitation, mining, and marketing of the minerals." *Id.*

In this case, the Abrahams seek damages from Sklar for the placement of a gas well and drilling pad on their property. They also claim that Sklar has a duty to "reasonably accommodate" their plans to develop a residential subdivision on the property by "adopt[ing] alternative recovery methods which do not preclude or impair the use of the surface estate." (Complaint, ¶XXII). They claim damages for loss of use of "the land taken for the drill pad, the operating well, and the flared gas line," as well as for "a proposed gas line." (Complaint, ¶XXVI). They also seek damages for diminution of value of their land as a result of "the presence of the oil well" and "the presence of the flared gas tank." (*Id.*). The plaintiffs also seek "[t]he value of the surface minerals which the Plaintiff cannot mine." (Complaint, ¶XXIX). Finally, the plaintiffs seek an injunction preventing Sklar from engaging in additional operations on the property.

■ As owner of the mineral estate, which, by operation of law, is the dominant estate, Sklar has the right to enter upon and use so much of the property as may be reasonably necessary to carry out and execute the purposes of the rights granted to Sklar by the lease. Thus, the Abrahams have no right to recover damages for diminished use of land arising out of Sklar's reasonable, necessary exercise of its rights

under the lease. As long as Sklar's operations on the Abrahams' land are free of negligence and performed in the necessary course of drilling, the Abrahams cannot recover damages unless provision for damages is made by contract or agreement. The Abrahams do not allege any such provision.

In their response to Sklar's motion for summary judgment, the plaintiffs argue that three issues remain:

a. Whether Sklar used more of the surface than was reasonably necessary to the mining operations;

b. Whether Sklar failed in its duty to give due consideration to the rights of the Abrahams as surface owners; and

c. Whether Sklar unnecessarily and unreasonably damaged the surface.

(Response to Motion for Summary Judgment, p. 3). In his affidavit, George Abraham states that "Sklar has damaged the land by placing survey markers, cutting and removing timber and grading the land." (Affidavit of George Abraham, p. 2).

As stated above, the Abrahams cannot recover for loss of use or diminution of value of their land with regard to their plans to develop a subdivision. Nor may they recover damages for the location of the well, drilling pad, or pipeline, without any evidence that the location was unreasonable. They may, however, recover damages if Sklar unnecessarily and unreasonably damaged the surface, or used more of the surface than was reasonably necessary to the mining operations.

The defendant has produced an affidavit of Charles E. Ostrander, P.E. This professional engineer states that Sklar's "operations and actions on and regarding the Subject Property were, and continue to be, consistent with those of a reasonably prudent operator." (Affidavit of Charles Os-

trander, ¶ 7). Further, he states that Sklar "is acting as a prudent operator, and acting in a customary and reasonable manner, in its exploration and production operations on, under and around the Subject Property. Its operations have not been unreasonable, negligent, or outside the standards accustom to the industry." (*Id.,* ¶ 8). The defendant contends that George Abraham's affidavit contains no details of Sklar's allegedly damaging behavior and alleged damage to the property. Sklar further contends that the issue of whether Sklar's operations and use of the surface estate are unreasonable or unnecessary requires expert testimony. Finally, Sklar asserts that the Abrahams' complaint does not assert that Sklar's operations themselves were unreasonable or negligent.

Regarding the last argument, the Court finds that a liberal reading of the complaint gives some support to a finding that it includes claims for unreasonable or negligent operations. Sklar is alleged to have intentionally or negligently breached its duty to "reasonably accommodate" the interests of the surface estate. Although "reasonable accommodation" is not the law in Mississippi, the allegations could be interpreted as charging Sklar with unreasonable or negligent conduct. In any event, this could be clarified by a motion to amend the complaint.

As for the necessity of expert testimony to establish the standard of care required of Sklar, the Court notes that other courts have found such testimony unnecessary. *See, e.g., Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913 (Colo.1997) (expert testimony not required to sustain negligence claim alleging that oil and gas operator violated regulations concerning oil well site reclamation operations); *Oliver v. Amity Mut. Irrigation Co.,* 994 P.2d 495 (Colo. App.1999) (standard of care a ditch company would owe an adjacent landowner was

duty of ordinary care and within knowledge and experience of ordinary persons).

More troubling is the lack of specificity in the allegations regarding what conduct by Sklar the Abrahams claim was unreasonable. However, based on the affidavit of George Abraham, the plaintiffs apparently contend that Sklar used more of the surface than was reasonably necessary, placed too may survey markers on the property, cut an unreasonable amount of timber, and graded an unreasonable amount of land. Without further development of the summary judgment record by both parties, the Court cannot at this time determine whether summary judgment is appropriate. Accordingly,

IT IS HEREBY ORDERED that Sklar Exploration Company, L.L.C. ("Sklar")'s motion for summary judgment (**docket entry 23**) is DENIED without prejudice.