Gulf Refining Co. *v.* Davis.

No. 39675 May 23, 1955 80 So. 2d 467

*Charles C. Richmond, Harvey L. Strahan, James A. Boone,* Jackson; *Welch & Gibbes, E. W. Graves,* Laurel, for appellant.

*McFarland & McFarland*, Bay Springs, for appellee.

LEE, J.

This is a suit by Malcolm Davis against Gulf Refining Company, a corporation, to recover for damages to his land and timber on account of the seepage and overflow from a salt-water pit, and the construction of a larger pit, on land of which he is the surface owner. There was a verdict and judgment for $1,500, and the Company appealed.

The declaration alleged that the plaintiff is the owner of 40 acres of land, as therein described, on which the defendant maintained a salt-water pit in connection with its production of natural gas; that salt-water seeped out and overflowed onto his land, rendering about 2 1/2 acres useless, and destroying 497 trees, which ranged from 2 to 10 inches in diameter; and that thereafter the defendant constructed another larger salt-water pit, on account of which he was further damaged.

The defendant, in its answer, admitted the construction of the salt-water pit, prior to the plaintiff's ownership of the land and its subsequent use, but it denied

that salt water from the pit caused damage to the land or timber. It admitted the construction of thhe larger pit, and that it cut and removed trees of the value of $25.08. It pled that its actions in the matter were pursuant to a certain oil, gas and mineral lease, of which it was the assignee, and that the original salt-water pit was constructed prior to the plaintiff's ownership of the land; that its operations, in connection with the smaller and in the construction of the larger pits, were conducted in a diligent and workmanlike manner, and were reasonably necessary. It attached thereto a copy of the original lease. Among the rights therein granted were "the right to construct and use on said land * * * facilities for the * * * storage of minerals produced therefrom, as well as salt water * and all rights necessary to the full enjoyment of this lease * *." It also provided that "lessee shall be responsible for all damages caused by lessee's operations other than damages necessarily caused by the exercise of the rights herein granted."

At the conclusion of the answer, it was stated that the defendant had an additional defense thereto, which it styled "first defense," and in which it was stated, "the declaration fails to state a cause of action against this defendant upon which relief can be granted," denied that it had damaged the plaintiff, and prayed for the dismissal of the cause with costs. The pleading was signed by the defendant's attorneys, but it did not represent that it was a demurrer. Section 1287, Code 1942. Nor did the attorneys attach their certificate that they believed it ought to be sustained. Section 1288, Code 1942. See also Section 1490, Code 1942.

If the pleading had amounted to a demurrer, the plaintiff could have amended his declaration by merely interposing the adverb "negligently," and it would have been sufficient. On motion of the defendant, a separate

hearing on its first defense was granted, and the motion was properly overruled.

The proof showed that the original pit was about 23 feet long, 19 feet wide, and 2 1/2 or 3 feet deep; and that the plaintiff purchased the land in 1951, together with another 40 acres, long after the pit had been dug.

Davis testified that about six months after he purchased the land, salt water began to run out of the pit; that it overflowed about the middle and also drained out along the pipe; that it drained in an easterly direction and spread out and killed the vegetation and timber in its wake; that between 2 and 3 acres of his land was ruined; that 497 trees of varying diameters, mostly small, of a value of $500.00, were killed; that he made complaint several times to the defendant, but without result; that finally the defendant's agents came upon the land, without his consent, and constructed the larger pit, the dimensions of which were 90 yards long, 60 yards wide and 15 feet deep, and which covered a part of the previously damaged area, and on which about 250 of the trees had been growing. Although he paid only $3,000.00 for his 80 acres in 1951, he was of the opinion that, prior to the damage, the 80 acres was worth $10,000.00 and that, after the damage, it was worth only $7,500.00. However, he testified that he was not asking for damage as to the whole 80 acres. Several witnesses gave corroboration of the plaintiff's version as to the nature and extent of the damage to the land and as to the number and value of the trees.

Several responsible employees of the defendant conceded that some salt water did get out of the small pit either by seepage or otherwise, and that it caused a small amount of damage. One witness admitted that he counted 75 trees that were injured, and then stopped. But most of the witnesses testified that the damage was nominal. Photographs of the scene were introduced in evidence.

Now "a grant or reservation of mines or minerals gives to the mineral owner the incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary in exploring, mining, removing, and marketing the minerals." 58 C. J. S., Mines and Minerals, Section 159 b. page 332. See also Section 159 c, page 334 thereof, as follows: "A mineral owner, in the absence of additional rights expressly conveyed or reserved, is limited to as much of the surface and such uses thereof as are reasonably necessary properly to mine and carry away the minerals." See also Grimes v. Goodman Drilling Co., 216 S. W. 202, a Texas case; Pure Oil Co. v. Gear, 83 P. 2d 389, an Oklahoma case.

But, "if the lessee, under the gas and oil lease, wrongfully injures the crops, he may be held liable for the damages." 24 Am. Jur., Gas and Oil, Section 41, page 548. And if he negligently occasions injury to the lessor, he may be held liable for any resultant damages. See 24 Am. Jur., Gas and Oil, Section 103, page 602. See also Phoenix v. Graham, 110 N. E. 2d 669, an Illinois case; Placid Oil Co. v. Lee, 243 S. W. 2d 860, a Texas case.

Thus under the law and under this particular oil and gas lease, the defendant had the right to dig the original pit and to use it for the storage of salt water. When it became insufficient, as the proof here disclosed, the defendant had the right to construct another; and it was the judge as to the kind of pit it should construct. Its act in so doing was not unreasonable, oppressive, or capricious. The plaintiff had complained that salt water from the small pit was overflowing onto his land. Besides the field was making more salt water, and it was necessary to increase the capacity of the then existing pit, or to dig a larger one.

However, it was not shown to be reasonably necessary for salt water to escape from the pit. Salt water

was shown to be a menace to vegetation, trees and land; and if the defendant negligently permitted it to overflow or escape from the pit, it is liable for the resultant damage.

Under the evidence in this case, there was an issue for the jury as to whether or not the defendant negligently permitted the salt water to seep or overflow onto the plaintiff's land; and the governing principles of the law as to negligence in this regard were fairly stated in the given instructions both for the plaintiff and the defendant.

The appellant contends that the verdict is grossly excessive and evinces passion. From a consideration of all of the facts in this record, it must be said that the verdict is greatly out of proportion to the damage. It could not be upheld in that amount even if the record was free from error. It is so large as to shock the conscience and require a new trial.

Appellant complains of error in several given instructions for the plaintiff and in the refusal of several of its requested instructions. The plaintiff obtained an instruction which, in effect, informed the jury that if it believed from a preponderance of the evidence that the defendant negligently permitted the salt water to spread over the land and caused the trees to die, then it should assess the damages therefor at the amount that it found to be the actual fair market value thereof at the time said timber was destroyed. The plaintiff testified that 497 trees, 250 of which were in the area where the large pit was constructed, died; but that all of the trees were dead before the large pit was made. The defendant admitted that, in the construction of the large pit, it cut and removed trees of a value of $25.08. The plaintiff also requested and was given the following instruction: "The court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence that the defendant cut and removed and or destroyed tim-

ber from the land of the plaintiff, in the construction of salt water pits, although he had a right to do so under the terms of the lease, you shall return a verdict for the plaintiff including the fair market value of the timber so cut and removed or destroyed.'' The jury was therefore warranted in believing that it could award the value of the trees which died as the result of salt water — said by the plaintiff to be 497 — and also the value of the trees that the defendant cut and removed or destroyed in constructing the large pit, said by the plaintiff to be 250 and by the defendant to be of the value of $25.08. Such an award would result in a pyramiding or doubling of damages. This instruction is not susceptible of the conclusion that its purpose was to inform the jury that the plaintiff was entitled at least to recover 'for such trees as the defendant had converted to its own use. It is confusing and misleading, and should not have been given. This was not a case for either punitive damages or for the recovery of the statutory penalty.

Appellant also complains that the court erred in refusing to admit testimony as to recent sales of this property. It offered, but on motion of the plaintiff the court excluded, the evidence of Rex Windham that he purchased the 80 acres of land here involved in February 1949 for $2,500; and that, during the same year, he sold the timber thereof for $1,700, and the land to B. Jernigan for $2,500. And of course the record shows that the plaintiff acquired the land from Jernigan in 1951, only two years later.

 █ In eminent domain, prior sales are admissible in determining the value of property unless they are so remote in time as to have no bearing upon the question of present value. 18 Am. Jur., Eminent Domain, Section 351, page 994; 29 C. J. S., Eminent Domain, Section 273, page 1267. In Davis v. Pennsylvania R. Co., 215 Pac. St. Rep. 581, 64 A. 774, 7 Ann. Cas. 581, the price paid 17 years before the taking was excluded as

too remote. The sales here occurred as recently as 4 or 5 years previous to the alleged damage, and were not too remote, unless there was great disparity in economic conditions between the date of such sales and the time of the damage complained of; and no such disparity was shown. This evidence should have been admitted for whatever it was worth.

In view of the fact that the plaintiff's recovery must be confined to the damage to the area of between 2 and 3 acres, less that which was utilized for the large pit, and for damage to vegetation and trees, and since there were no singular facts to justify a conclusion that the value of the balance of the 80 acres would be in any wise affected, it is presumed that the plaintiff will not again invoke the before and after damage rule.

For the reasons stated, the cause is reversed and remanded for a new trial.

Reversed and remanded.

*Roberds, P. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.