792 So.2d 282 (2001)
W.J. MORRIS, III and Martha Jo Morris Howell, Appellants
v.
W.R. FAIRCHILD CONSTRUCTION COMPANY, LTD., Appellee.
No. 1999-CA-01107-COA.
Court of Appeals of Mississippi.
January 16, 2001.
Rehearing Denied May 8, 2001.
Certiorari Denied August 9, 2001.
*283 J. Boyce Holleman, Dean Holleman, Gulfport, Attorneys for Appellants.
Lawrence Cary Gunn Jr, Hattiesburg, Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
MYERS, J., for the Court:
¶ 1. W.J. Morris, III and Martha Jo Morris Howell ( Morris) appeal the decision of the Lamar County Chancery Court granting a prescriptive easement across their property to the appellee, W.R. Fairchild Construction Company, LTD. (Fairchild), and awarding Morris $19,629.50 as the sum for damages for Fairchild's excavation of property adjacent to their own.
¶ 2. This appeal addresses two issues involving four tracts of adjoining land situated on the northern side of Highway 98 in Lamar County, Mississippi.

I. THE TRIAL COURT'S FINDING OF A PRESCRIPTIVE EASEMENT ACROSS MORRIS'S LAND

FACTS
¶ 3. In 1973, Fairchild purchased a fourteen acre tract adjoined to the east and west by property owned by Morris. A gravel road, known as Hover Road, runs from east to west on the northern portion of Morris's west property. This road met with Gravel Pit Road, which led to Highway 98. Until 1993, this road was one of two options for ingress and egress to and from the Fairchild property. The other was an access directly to Highway 98 on the eastern portion of Fairchild's land. This access utilized a culvert to traverse the large ditch separating the property and Highway 98.
¶ 4. The evidence presented at trial reflected that Hover Road was and is used by several individuals for purposes of ingress and egress to their respective properties. Among those who use or have consistently used the road for such purposes are Bill Hover, Archie Hover, Johnny Cameron, and the family of Floyd David Bullock. Bill Hover, who uses Hover Road for his gravel business, testified at trial that his use of the road was by permission from Morris. No evidence was presented regarding permission for any of the other persons' use of the road.
¶ 5. In 1993, Fairchild sold the eastern portion of its land to Laird, leaving only the Hover Road access to and from Fairchild's remaining property. In 1993, Fairchild agreed to sell this remaining property to the Pearl River Valley Electric Power Association (Pearl River). However, Pearl River withdrew from negotiations when Morris informed them that he would not allow them access to Hover Road through his property. Fairchild subsequently filed the underlying suit against Morris, alleging that Morris had committed tortious interference with the contract for sale and that a prescriptive *284 easement existed over Morris's property. The chancellor found that there was no tortious interference, but that a prescriptive easement existed across the Morris property.

STANDARD OF REVIEW
¶ 6. It is well established in Mississippi jurisprudence that the scope of review exercised by this Court with respect to a chancellor's findings is limited to a determination of whether those findings are "manifestly erroneous or due to the application of an erroneous legal standard." Smith v. Smith, 607 So.2d 122, 126 (Miss.1992). Moreover, we will not reverse a chancellor's factual finding where it is supported by substantial evidence. Morreale v. Morreale, 646 So.2d 1264, 1266 (Miss.1994).

ANALYSIS
¶ 7. The standard and burden of proof to establish a prescriptive easement is the same as a claim for adverse possession of land. Rutland v. Stewart, 630 So.2d 996, 999 (Miss.1994). The elements that must be proved in such a claim are that use of the property is: (1) open, notorious, and visible; (2) hostile; (3) under a claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years. Myers v. Blair, 611 So.2d 969, 971 (Miss.1992). As a matter of law, the chancellor found that the use of Hover Road by adjoining land owners had been open, continuous and notorious without objection by any of the land owners over which it crossed for considerably more than ten years, thereby creating a prescriptive easement for the continued use by adjoining land owners and their licensees and invitees.
¶ 8. Morris argues that Bill Hover's use of the road for access to his business was by express permission from Morris, and that therefore, the adverse requirement was not satisfied. However, the trial judge found that Fairchild also used the road for access to his property, and that this use was not pursuant to express permission. Morris further argues that there was no clear and convincing evidence that the use by Archie Hover, Johnny Cameron and the Bullock family was not by permission. This is an interesting point, as the courts of this state have never directly addressed the issue of burden of proof on the permission, or "hostile," element of adverse possession.
¶ 9. Requiring a litigant who is attempting to establish adverse possession or a prescriptive easement to prove that there was no permission for use would be unreasonable. The law typically frowns upon requiring a party to prove a negative averment.
It is a general rule of evidence, noticed by the elementary writers upon that subject (1 Greenl. Ev. §§ 79) that `where the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party.' When a negative is averred in pleading, or plaintiff's case depends upon the establishment of a negative, and the means of proving the fact are equally within the control of each party, then the burden of proof is upon the party averring the negative; but when the opposite party must, from the nature of the case, himself be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is manifestly just and reasonable that the party which is in possession of the proof should be required to adduce it; or, upon his failure to do so, we must presume it does not exist, which of itself establishes a negative. *285 United States v. Denver & Rio Grande Railroad Company, 191 U.S. 84, 24 S.Ct. 33, 48 L.Ed. 106 (1903).
¶ 10. Further, the majority of jurisdictions recognize a presumption of adverse use once evidence has shown use of the property for the prescriptive period. United States v. 43.12 Acres of Land, 554 F.Supp. 1039 (W.D.Mo.1983); Brown v. Ware, 129 Ariz. 249, 630 P.2d 545 (1981); Durbin v. Bonanza Corp., 716 P.2d 1124 (Colo.Ct.App.1986). In this case, Morris would be in the better position to prove that any use of the road was pursuant to a grant of permission.
¶ 11. The chancellor found that Hover Road had been used openly and continuously by Archie Hover, Johnny Cameron, and the family of Floyd David Bullock to access their residences for an unspecified period of time prior to 1967. He further found that Bill Hover and Fairchild had used the road to remove gravel from Fairchild's property without hindrance since 1973. The chancellor based these findings chiefly upon the testimony of Bill Hover and the deposition of Lee Cameron. These findings of fact are supported by substantial evidence contained in the record and do not represent manifest error.

II. THE TRIAL COURT'S AWARD OF $19,629.50 TO MORRIS FOR DAMAGE TO HIS PROPERTY CAUSED BY THE EXCAVATION OF ADJACENT PROPERTY BY FAIRCHILD

FACTS
¶ 12. In 1993, Fairchild sold its eastern acreage to Laird. As part of the terms of sale, Fairchild agreed to level out a portion of a hill on the eastern most portion of the property so that Laird could set up a nursery business. A portion of this hill was on Morris's west property and was not leveled out. The leveling of the hill on the Laird property created a sixteen foot bluff, which soon began to erode. Morris filed a counterclaim to Fairchild's original claim, seeking compensation for damages caused by the erosion.
¶ 13. At trial, several estimates for cost to repair the bluff were submitted for the chancellor's consideration. These estimates ranged from $9,515 to $113,105. The parties stipulated that Laird would testify that he was willing to allow either party to use a reasonable portion of his property to make any necessary corrective repairs. Each party presented their own appraisals of the Morris property, both before and after excavation. Morris's appraisal provided for a loss in value of $113,275. This appraisal included 5.75 acres of Morris's property and considered the property's highest and best use to be the building of a commercial office park. Fairchild's appraisal included a twenty feet by two-hundred feet parcel of land and, assuming the land to be unusable in the future, stipulated a $33,000 loss in value. The chancellor found that the appropriate measure by which to cure Morris's property would be six feet retaining wall at a cost of $19, 629.50. This amount was awarded to Morris.

ANALYSIS
¶ 14. The Mississippi Supreme Court has held that where property has been damaged but may be restored to its former condition at a cost less than the loss of value of the land, the cost of restoration may be the measure of damages. Bynum v. Mandrel Industries, Inc., 241 So.2d 629, 634 (Miss.1970) (citing Mississippi Power Co. v. Harrison, 247 Miss. 400, 152 So.2d 892 (1963); Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963)). Where "the damage is temporary or if the damage involved only a small part of a larger tract without affecting the remainder, the before and after rule does *286 not apply." Sun Oil Company v. Nunnery, 251 Miss. 631, 170 So.2d 24, 31 (1964) (citing Gulf Refining Co. v. Davis, 224 Miss. 464, 80 So.2d 467 (1955); Southland Co. v. Aaron, 221 Miss. 59, 72 So.2d 161 (1954)). Moreover, the proper measure of damages should have the effect of fully compensating Morris with the least possible burden to Fairchild, as this "is the object of every such rule." Sun Oil Company v. Nunnery, 170 So.2d at 32.
¶ 15. The chancellor stated in his judgment that he found no loss of value presented in the evidence. This finding is not supported by substantial evidence in the record, as both Morris and Fairchild offered appraisals showing substantial loss of value to the land. However, the chancellor did apply the correct legal standard in finding that the "measure of damages for the adjoining excavation which affects Morris's property is the cost to have the Morris property restored to its natural condition to prevent erosion and foreseeable harm.". In applying this standard, the chancellor found that the construction of a six feet retaining wall, at a cost of $19,629.50, would be the appropriate measure by which to effectively cure Morris's property. Id. This decision is supported by substantial evidence and does not constitute manifest error.
¶ 16. THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.