# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00112-COA

**LEWIS MILLER, JR.**                                                          **APPELLANT**

**v.**

**VICKSBURG MASONIC TEMPLE**                                      **APPELLEE**

DATE OF JUDGMENT:               11/07/2017
TRIAL JUDGE:                    HON. M. JAMES CHANEY JR.
COURT FROM WHICH APPEALED:      WARREN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         DAVID M. SESSUMS
ATTORNEY FOR APPELLEE:          FRANK G. VOLLOR
NATURE OF THE CASE:             CIVIL - PROPERTY DAMAGE
DISPOSITION:                    AFFIRMED - 08/13/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### BARNES, C.J., FOR THE COURT:

¶1.     In 2015, the Vicksburg Masonic Temple ("the Lodge") filed a complaint against Lewis Miller Jr., an adjacent landowner, seeking damages to repair and restore the lateral and subjacent support of its property.  After a jury trial in Warren County Circuit Court, the Lodge was awarded $200,000 in damages.  Miller filed a motion for a judgment notwithstanding the verdict (JNOV) or alternatively for a new trial, which the trial court denied.  Miller appeals the judgment, and finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The Lodge owns 2.64 acres of property fronting Cain Ridge Road in Vicksburg, Mississippi. In 1997, Miller, owner of Riverside Construction Company, bought the property

adjacent to the Lodge's property to use as fill dirt for his construction projects and, potentially, to develop the property for commercial use. After talking with James Price, the Lodge's president and a friend, Miller excavated a vertical cut up to the edge of the Lodge's property line and installed a drainage system, including a five-foot-wide drainage ditch, to take care of any water runoff from the Lodge's property. For safety reasons, he also installed fencing at the top of the ditch in accordance with the Lodge's request.

¶3.    The drainage system and ditch worked well from 1997 until 2010, at which time erosion occurred to the point that certain portions of the ditch failed, and excess water flowed over the top of the ditch. The Lodge eventually moved the fence because it was hanging over the eroded soil, posing a safety issue for its patrons. After discussions with Lodge members, Miller put some plastic sheeting down, slowing the progression of the erosion. In 2013 or 2014, Miller excavated a swale on the Lodge's property to direct the water back to Cain Ridge Road. Since that time, no further erosion has taken place.

¶4.    On October 16, 2015, the Lodge brought a suit against Miller, alleging he was strictly liable for the costs of restoring its property to substantially the same condition before the lateral and subjacent support was removed. The Lodge requested damages in the amount of $497,366.58—"the cost of repairing and restoring the lateral and subjacent support to [the Lodge's] property"—as well as attorney's fees and court costs.

¶5.    A jury trial was held October 31-November 3, 2017. Price testified that after Miller contacted him about excavating the property, he unofficially consulted with an attorney, who told him Miller had an obligation not to damage the Lodge's property. Because Miller was concerned about the excess water runoff, Price said he gave Miller permission to rework the

2

Lodge's drainage system. He said that Miller "built [the ditch] and maintained it" and never made any representation that it was the Lodge's responsibility to maintain the ditch. Miller never charged the Lodge for any of the maintenance that he or his employees had performed over the years.

¶6.     Johnny Lowrey, the Lodge's current president, said he noticed that the ditch was failing in 2011. Because he has a background in construction, Lowrey was asked to attend a Lodge meeting on April 16, 2013, to discuss the issue with Miller. He testified that, at that meeting, Miller presented a plan to build a retaining wall. In 2014, Lowrey and Miller had several discussions and decided that the Lodge's downspouts needed to be redirected; so Lowrey closed up the downspouts that Miller had installed.

¶7.     Jeffrey Broom, a local contractor, testified that he provided the Lodge a bid for a retaining wall in the amount of $533,528.98.[1]

¶8.     Jimmy Fairchilds Jr., who recorded the minutes from the Lodge's April 16, 2013 meeting, corroborated Lowrey's testimony that Miller proposed building a retaining wall. Fairchilds was responsible for lawn maintenance at the Lodge for several years and said that any leaves or debris in the ditch were from trees on Miller's property and that the ditch was not the Lodge's responsibility.

¶9.     At the close of the Lodge's case-in-chief, Miller moved for a directed verdict, which the trial court denied. David Dennis, a geotechnical engineer testifying for Miller as an expert witness, stated that the soil at the Lodge's property, loess soil, "is characteristically

---

[1] In the complaint, the amount of damages requested was $497,366.58. Broom revised the bid amount for the retaining wall at trial to reflect an increase in material costs.

very stable on a near-vertical slope." But he also noted that loess soil was "very erodible" and opined: "The primary item which caused the failure of th[e] ditch is the waterfall effect and the clogging of the ditch which created the waterfall effect, which is a maintenance issue. It's a maintenance issue." Although Dennis acknowledged that he was not testifying as to who had responsibility for the maintenance of the ditch, he did confirm that Miller or one of Miller's employees had cleaned out the ditch in 2010.

¶10. In his written report, the Lodge's expert witness, James May, concurred with Dennis, stating that "[i]t [was] the maintenance of the drainage structure that [was] at the heart of the problem." May contended that "[i]t would have been better if the concrete drainage structure would not have been installed than to install it and not maintain it." Although he acknowledged that loess soil would stand a vertical cut for years, May noted that if there was a concentrated flow of water on the loess soil, "you've got a problem."

¶11. Miller said that there were drainage issues with the Lodge's property before he began excavating, claiming Price told him the area behind the Lodge's building stayed wet and asked Miller if he could do anything about the issue. Thus, Miller averred that he built the ditch to help the Lodge handle its water-drainage issues; he did not need the drainage ditch. Miller did acknowledge that he paid for the cost of constructing the ditch ($30,000 to $50,000). He contended that he only warranted the work for one year; after that, it was the Lodge's responsibility to maintain the ditch. However, Miller's employee, Wendell Moore, testified that he had gone to the property in 2004 to repair some cracks in the ditch. Miller also had him to go to the property in 2013 to discuss the water drainage issue with Lowrey.

¶12. On rebuttal, Price admitted there was a "wet spot" in the back of the Lodge's property

but denied that he asked Miller to remedy the issue. Price reiterated that the ditch belonged to Miller, not the Lodge.

¶13. The jury awarded the Lodge a verdict of $200,000. Miller filed a motion for JNOV or alternatively for a new trial, which the trial court denied. Appealing the verdict, Miller contends that the Lodge failed to present evidence that he breached any duty and failed to prove a proper measure of damages.

## DISCUSSION

¶14. Miller argues that he did not breach a duty to provide lateral support to the Lodge's property and that the Lodge failed to prove he was liable for maintenance of the ditch. He further claims that the only evidence of damages presented by the Lodge was the cost to build a retaining wall but the Lodge failed to prove that a retaining wall was necessary. Thus, he asserts that there was insufficient evidence to support the jury's verdict.

¶15. "The standard of review for denial of a [JNOV] and a directed verdict are identical." *Hopkins v. Schaeffer*, 840 So. 2d 737, 738 (¶6) (Miss. Ct. App. 2003). Viewing the evidence in the light most favorable to the nonmovant, if the verdict can be supported by the evidence, then "neither a directed verdict nor a JNOV is appropriate." *Loyacono v. Travelers Ins. Co.*, 163 So. 3d 932, 935 (¶9) (Miss. 2014). Such motions are reviewed de novo. *Id*.

    *A.    Breach of Duty/Negligence*

¶16. In its complaint, the Lodge asserted that due to Miller's removal of the lateral and subjacent support of its property, Miller was strictly liable for the damages the Lodge suffered and "the costs of restoring the property to substantially the same condition." In *Pecanty v. Mississippi Southern Bank*, 49 So. 3d 114, 118 (¶¶17-18) (Miss. Ct. App. 2016),

this Court held:

> Under common law traditions, "adjoining landowners have a natural right to the lateral support of each other's ground; this principle applies only to land in its natural state; the duty to provide lateral support is ongoing, and one of continued support running against the servient land." 1 Am. Jur. 2d Adjoining Landowners § 44 (2005). The duty is absolute and is not predicated on negligence. 2 C.J.S. Adjoining Landowners § 8 (2003).

While such duty does not preclude the landowner from excavating his own land, he "must do so in a manner that protects adjoining property in its natural state from collapsing or eroding away." 1 Am. Jur. 2d *Adjoining Landowners* § 50 (2016). "In other words, an adjoining property owner, in excavating on one's own land, who removes lateral support to the injury of a neighbor's land, is liable in an action, therefore, without proof of negligence." *Id*. at § 51.

¶17. However, Miller argues that there was no evidence presented that his removal of the lateral support caused the erosion. Noting the testimony by both expert witnesses, Miller asserts that the loess soil on the property could withstand a vertical cut without the need for lateral support and that it was the lack of maintenance of the ditch, which he contends was the Lodge's responsibility, that caused the erosion issue.

¶18. Generally, questions of proximate cause and negligence are for the jury to determine "under proper instructions of the court as to the applicable principles of law involved." *Hankins Lumber Co. v. Moore*, 774 So. 2d 459, 464 (¶11) (Miss. Ct. App. 2000). Breach of duty is also an issue to be decided by the fact-finder "once sufficient evidence is presented in a negligence case." *Id*. In this instance, the jury was instructed on both theories of liability. Jury Instruction P-3 informed the jury regarding Miller's absolute duty as an

6

adjoining landowner to provide lateral support. Jury Instruction D-4(A) instructed the jury that should it find the Lodge was responsible for the maintenance of the ditch, it was to render a verdict for Miller.

¶19. There is no dispute that Miller excavated up to the Lodge's property line, removing the lateral support. The Lodge's expert witness, May, did state that loess soil would "retain an almost vertical cut for years and years," but he also noted that when you put an artificial structure on top of it, "you have to maintain it or it's detrimental. I mean, it adds weight, and if it leaks, it's more of a problem than if you had never put the structure up there." Although it was disputed at trial whether Miller built the drainage ditch at the Lodge's request and who was responsible for the ditch's maintenance, it was undisputed that Miller paid for the ditch's installation and provided occasional maintenance to the ditch, indicating some acceptance of responsibility in that regard.

¶20. A trial court should only grant a motion for JNOV "[i]f the facts and inferences drawn from th[e] evidence point so overwhelmingly in favor of the movant that reasonable jurors could not have arrived at a contrary verdict." *Roop v. So. Pharm. Corp.*, 188 So. 3d 1179, 1190 (¶39) (Miss. 2016). Viewing the evidence in light most favorable to the Lodge, we find there was sufficient evidence to support the jury's finding that Miller was liable for the damage to the Lodge's property.[2]

---

[2] Miller also remarks that the trial court "erred in denying [his] request for a peremptory instruction," but he fails to identify the specific instruction and makes no substantive argument in this regard. Regardless, as with a JNOV, in passing on a request for peremptory instruction the evidence is "viewed in the light most favorable to the party opposed to the motion, giving the benefit of all the favorable inferences that may be reasonably drawn from the evidence, and considering any uncontradicted evidence offered

*B.    Damages*

¶21.    Miller also claims the Lodge "presented no evidence as to the cost to repair the drainage ditch and/or system, nor any diminishment to the value of its land, either before or after, and presented no value of the land/dirt actually washed away by erosion." Arguing in support of the motion for a directed verdict, Miller's attorney stated:

> We show unto the Court that the measure of damages in a case involving damage to real estate is either the diminishment of the value of the property or the difference between the cost of repairs and the value of that property. In this case, there has been a total failure to prove any value of the property of the Masonic Lodge. There's no evidence. No scintilla. No even attempt at it. So the Court lacks a proper measure of damages in this case. There's no evidence of the value of the plaintiff's property. There's no evidence of any diminishment of the value of the plaintiff's property, and on that basis the plaintiff has failed to establish any measure of damages.

The Lodge's attorney, citing *Bell v. First Columbus National Bank*, 493 So. 2d 964 (Miss. 1986), and *Locklear v. Sellers*, 126 So. 3d 978 (Miss. Ct. App. 2013), responded that the Lodge was entitled to choose *either* the diminution in value of the property or the cost of repair (i.e., the retaining wall cost) and that Miller bore the burden to present evidence of another measure of damages, which he failed to do.

¶22.    In *Bell*, after the bank foreclosed on the Bells' property, the couple sold and removed several fixtures from the home (appliances, light fixtures, etc.), requiring the bank to repair the damage and replace the missing items. *Bell*, 493 So. 2d at 966-67. A jury awarded the

by the moving party." *Pickering v. Industria Masina I Traktora (IMT)*, 740 So. 2d 836, 842 (¶23) (Miss. 1999). If the facts and evidence "point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, then the peremptory instruction should be granted." *Id*. at 842-43 (¶23). Concluding that the trial court did not err in denying Miller's motion for a directed verdict and a JNOV, we further find no error in any alleged denial of Miller's peremptory instruction.

8

bank $5,350 in actual damages and $1,000 in punitive damages. *Id*. at 967. The Bells challenged the damage award on appeal, arguing that the trial court erred by allowing the bank to use replacement cost of the items as a measure of the damages. *Id*. at 969. The Mississippi Supreme Court concluded:

> [A p]laintiff can choose to prove *either reasonable cost of replacement or repairs or diminution in value*, and if he proves either of these measures with reasonable certainty, damages are allowable, so long as the plaintiff will not be unjustly enriched and the defendant does not demonstrate that there is a more appropriate measure of damages.
>
> . . . .
>
> In the case at bar, the diminution in value before and after the damage to the property may have been greater than the cost of repair. . . . Notwithstanding, we find that the bank has elected to proceed upon a reasonable cost of replacement and repair theory. . . . The bank chose its remedy; there is no unjust enrichment to it under these circumstances. The Bells have not demonstrated that there is a more appropriate measure for making the bank whole.

*Id*. at 970 (emphasis added). Citing *Bell*, our Court later upheld a damage award for restoration costs in *Locklear*, finding the defendant had failed to show a better measure of damages. *Locklear*, 126 So. 3d at 981-82 (¶¶9-11).[3]

¶23.   In *Morris v. W.R. Fairchild Const. Co. Ltd.*, 792 So. 2d 282, 285 (¶12) (Miss. Ct. App. 2001), Fairchild Construction sold a portion of its property adjacent to W.J. Morris's land to a third party. As part of the sale agreement's terms, Fairchild leveled a portion of the property, creating a sixteen-foot bluff next to Morris's property that soon began to erode. *Id*. Although the parties provided appraisals showing loss of value to the land, this Court

---

[3] The defendant had also admitted the plaintiffs were entitled to restoration damages in their responses to the requests for admission.

9

concluded that the chancellor "applied the correct legal standard in finding that the 'measure of damages for the adjoining excavation [that] affect[ed] Morris's property is the cost to have the property restored to its natural condition to prevent erosion and further harm,'" which was the cost of a retaining wall. *Id.* at 285 (¶15); *see also Maslon v. Brown*, 148 So. 3d 27, 31 (¶12) (Miss. Ct. App. 2014) ("When the injury to land is temporary and can be restored, the appropriate measure of damages is the cost of restoration.") Based on this precedent, we find no merit to Miller's argument that the Lodge also had to show a diminution in value to its property in order to prove damages.

¶24.    Miller distinguishes *Bell* and *Locklear*, stating those cases concern the *measure* of damages, not the *necessity* of damages. "Where costs of repairs are relied upon as the measure of damages, the proof must establish (1) that the repairs were necessary as the result of the wrongful act, and (2) that the cost was reasonable." *Nat'l Fire Ins. Co. of Hartford v. Slayden*, 227 Miss. 285, 290, 85 So. 2d 916, 918 (1956).

¶25.    We find there was sufficient evidence presented as to the necessity of the retaining wall. Three Lodge members testified that Miller had suggested a retaining wall to fix the erosion issue. According to Lowrey, Miller came to the Lodge meeting on April 16, 2013, with a proposal, testifying:

    Q.    He had a plan?

    A.    And I thought it was a good plan.

    . . . .

    Q.    Was that plan ever implemented?

    A.    No, sir.

10

Q.   It never was done?

A.   (Shakes head negatively.)

Q.   Okay.  What was that plan?  What was he going to do?

A.   Drill H-beams into the soil behind this vertical slope, this quarter-to-one slope.  In some instances, you would drive pilings—but he has got the forethought to know that the driving of the piling could cause further damage—drill holes and set steel H-beams in the concrete incrementally and then set slabs of concrete and/or timbers, kind of like any of the other retaining walls you see, and then back fill that with dirt.

Q.   Okay.  That was the plan?

A.   That was what he said he could do [to it].

Fairchilds also averred that Miller proposed building a retaining wall at that meeting:

Q.   And they say that he proposed—made a proposal for repairs to the bank behind the lodge?

A.   Yes, sir.

Q.   Do you remember that proposal?

A.   Yes, sir.

Q.   What was that proposal?

A.   He promised us he was going to start building a retaining wall within 60 days.

Q.   Did he ever do that?

A.   No, sir.

Charles "Buddy" Howard also stated that he was at the meeting and that Miller said he "was going to put up a wall and prevent any further damage to the sloughing off of dirt and such there."  The Lodge's minutes from the meeting stated that Miller "attended the meeting and

11

presented a proposal for repair of the bank behind the lodge." Miller, on the other hand, denied he made any proposal for a retaining wall. When there is conflicting evidence, "we defer to the jury's determination of the credibility of witnesses and the weight of their testimony." *Bass v. Bobo*, 980 So. 2d 944, 950 (¶15) (Miss. Ct. App. 2007).

¶26. Furthermore, the jury was instructed as to the measure *and* the necessity of damages. Jury Instruction P-2 provided in part: "In determining the amount of damages, if any, to award [the Lodge,] you should consider in your determination of an award the reasonable costs to restore the lateral and subjacent support to the land of property of [the Lodge.]." Jury Instruction P-12 stated: "The [c]ourt instructs the jury that the measure of damages relating to property damage is that which it would cost to restore the lateral and subjacent support to the property." Finally, Jury Instruction D-21 provided:

> The Court instructs the Jury that when costs of repairs are relied upon as a measure of damages it is necessary for a plaintiff to establish by a preponderance of the evidence that (1) *the repairs are necessary as a result of the alleged wrongful act* and (2) *the cost of the repairs are necessary and reasonable*.
>
> The Court further instructs the jury that unless the Vicksburg Masonic Temple has proven to you by a preponderance of the evidence that construction of a retaining wall *is necessary* as a result of the alleged wrongful acts of Lewis Miller, Jr. and that the cost of such retaining wall *is necessary and reasonable* then you may not award damages for the cost of any retaining wall.

(Emphasis added). The jury determined that the evidence was sufficient to warrant damages of $200,000.

¶27. Finding sufficient evidence to support the verdict, we affirm the judgment.

¶28. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD,**

12

**LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. GREENLEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**GREENLEE, J., DISSENTING:**

¶29.    I am of the opinion that the Lodge failed to prove the proper measure of damages. Therefore, I respectfully dissent.

¶30.    It is well established that "[t]he plaintiff has the burden of proving damages." *Maslon v. Brown*, 148 So. 3d 27, 30 (¶9) (Miss. Ct. App. 2014) (citing *Evans v. Clemons*, 872 So. 2d 23, 29 (¶21) (Miss. Ct. App. 2003)).  However, our supreme court has noted that "[i]t is sometimes a perplexing question as to the method to be used in proving damages to real property." *Chevron Oil Company v. Snellgrove*, 175 So. 2d 471, 474 (Miss. 1965).

¶31.    The majority opinion and the Lodge rely on *Bell v. First Columbus National Bank*, 493 So. 2d 964 (Miss. 1986), for the appropriate measure of damages in this case.  In *Bell*, our supreme court held that a "[p]laintiff can choose to prove *either* reasonable cost of replacement or repairs *or* diminution in value, and if he proves either of these measures with reasonable certainty, damages are allowable so long as the plaintiff will not be unjustly enriched and the defendant does not demonstrate that there is a more appropriate measure of damages." *Bell*, 493 So. 2d at 970.  However, in *Bell*, our supreme court was formulating method for proving damages resulting from waste. *Id*. at 969-70.  The Bells "impaired the value of . . . mortgaged property by selling items in the home before foreclosure . . . ." *Id*. Because the case before this Court involves damage to real property (or land), I believe that *Bell* is inapplicable.

13

¶32.    With respect to the method for proving damages to real property, our supreme court

has held:

> As a general rule, the measure of damages in action[s] for permanent injury to
> land where there is no willful trespass is the difference in the value in the
> before-and-after damage to the premises. We have called attention to this rule
> repeatedly. It is also true that where the land . . . has been damaged but the
> property may be restored to its former condition at a cost less than the value
> determine[d] by the diminution of the value of the land, the cost of restoration
> of the property, plus compensation for the loss of its use, may be the measure
> of damages. This rule, however, is usually confined to the introduction of
> evidence to show a reduction, and not an increase, of damages above the
> diminution in value of the land resulting from the injury.

*Chevron Oil Company*, 175 So. 2d at 474 (citations omitted).

¶33.    I recognize that the "general rule" provides for the measure of damages in actions for

*permanent* injury to land. The majority opinion cites to *Morris v. W.R. Fairchild*

*Construction Co. Ltd.*, 792 So. 2d 282 (Miss. Ct. App. 2001), and *Maslon v. Brown*, 148 So.

3d 27 (Miss. Ct. App. 2014), which are cases that involve *temporary* injury to land.

However, there is no evidence that the injury to the land in this case was temporary. At trial,

the plaintiff's expert simply gave an estimate for the cost of a retaining wall. He did not

testify that the damage could be corrected through repairs.[4]

¶34.    But even if the injury to the land was temporary, our supreme court has held that the

cost of repairs may be the measure of damages when the property can be "restored to its

former condition *at a cost less than the value determined by the diminution of the value of*

*the land . . . .*" *Chevron Oil Company*, 175 So. 2d at 474 (emphasis added). Here, there was

---

[4] It is also worth noting that *Maslon* and another case cited by the majority—*Locklear*
*v. Sellers*, 126 So. 3d 978 (Miss. Ct. App. 2013)—involved trespasses to land. Here, there
was no willful trespass.

no evidence as to the value of the land before or after the erosion.

¶35.    As noted above, the majority opinion cites to *Morris v. W.R. Fairchild Construction Co. Ltd.* In that case, Fairchild sold land to a person named Laird. *Morris*, 792 So. 2d at 285 (¶12). "As part of the terms of sale, Fairchild agreed to level out a portion of the [land]." *Id*. However, part of the land was on Morris's property, and the leveling created a bluff, which began to erode. *Id*. At the trial in *Morris*, several estimates, ranging from $9,515 to $113,105, for costs to repair the bluff were submitted. *Id*. at 285 (¶13). And each party presented their own appraisals of Morris's property, both before and after the excavation. *Id*. "Morris's appraisal provided for a loss in value of $113,275." *Id*. Whereas Fairchild's appraisal stipulated a $33,000 loss in value. *Id*.

¶36.    In *Morris*, "[t]he chancellor found that the appropriate measure by which to cure Morris's property would be [a] six [foot] retaining wall at a cost of $19,629.50." *Id*. In affirming the chancellor's judgment in *Morris*, this Court noted that "where property has been damaged but may be restored to its former condition *at a cost less than the loss of the value of the land*, the cost of restoration may be the measure of damages." *Id*. at 285 (¶14) (emphasis added). This Court further stated that "the proper measure of damages should have the effect of fully compensating [the injured party] with the least possible burden to [the defendant], as this 'is the object of every such rule.'" *Id*. at 286 (¶14) (quoting *Sun Oil Company v. Nunnery*, 170 So. 2d 24, 32 (Miss. 1964)).

¶37.    The Lodge failed to prove the proper measure of damages by not offering proof of any decrease in value of the real property. Neither the court nor the jury had the ability to compare the amounts of the costs to repair with the diminution in value and therefore could

15

not have decided what the law required, which would have been the lesser of the two.

Therefore, I must dissent.